UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVEN EUGENE HENDERSON | CIVIL ACTION |
| VERSUS | No. 19-13072 |
| ATMOS ENERGY, ET AL. | SECTION I |

ORDER AND REASONS

Before the Court is the *Daubert* motion[1] of defendant Atmos Energy Corporation ("Atmos") to exclude expert testimony by Ramon Ramos ("Ramos").[2] Ramos is plaintiff Steven Eugene Henderson's ("Henderson") proposed expert on "construction code enforcement[.]"[3] Henderson has not submitted any opposition to the motion. For the following reasons, Atmos's motion is granted without opposition.

I.    BACKGROUND AND FACTS

This case arises from injuries allegedly suffered by Henderson on October 21, 2018.[4] Henderson alleges that Atmos "had been digging holes . . . in the sidewalk areas to access pipelines[,]" and that "[l]arge piles of dirt were the byproduct of said holes and had [sic] one small green pole next to it and a net over it."[5] Henderson claims that the "netting did not prevent mud from running down the pile and

---

[1] R. Doc. No. 53.
[2] Atmos's motion was combined with a related motion to "strike" Ramos from testifying due to plaintiff's failure to comply with the scheduling order deadline for exchanging expert reports. *See* R. Doc. No. 53. In a September 23, 2020 status conference, the Court orally denied this portion of Atmos's motion, finding good cause for any delay by Henderson's counsel.
[3] R. Doc. No. 49.
[4] R. Doc. No. 1-3.
[5] *Id.* at 4.

accumulating on surrounding property and sidewalks."[6]   Henderson alleges that, after stepping out of his car, he "slipped on mud outside the green pole and construction netting and . . . fell on the sidewalk."[7]  Henderson proceeds to argue that Atmos caused this accident by (1) "creating an unsafe and hazardous worksite and failure [sic] to safeguard against the same;" (2) "failing to properly mark said hazardous worksite with signage; and" (3) committing "other acts of fault[.]"[8]

Henderson's witness list indicated that he may call Ramos as an expert in "code enforcement[.]"[9]  Ramos's report, provided by Henderson to Atmos, states that Ramos has "approximately 50 years of construction experience" but offers no other details as to his background or qualifications.[10]  Ramos states that his opinion is based on "the evidence available to" him, but he does not provide any description of the evidence that was (and was not) available.[11]  Ramos acknowledges that he is "not familiar with the specifications that these entities have concerning" the practice of re-filling excavated holes with excavated material before noting that this goes against the "specifications" of "[m]ost of the work that [he has] been involved in over the years[.]"[12]

Ramos states that he "found that the barricades surrounding the work . . . were inadequate[;]" that "[i]t is apparent that the work being performed . . . was

---

[6] *Id.*
[7] *Id.*
[8] *Id.* at 5.
[9] R. Doc. No. 49.
[10] R. Doc. No. 53-2, at 2.
[11] *Id.*
[12] *Id.*

subcontracted[;]" and that he "found that site maintenance was inadequate to provide a safe environment for the public."[13]   Ramos concludes his report by stating that "[h]ad the clayed material (mud) been cleaned and/or washed off, then it would have been highly unlikely that [Henderson] would have fallen."[14]   Despite Henderson's description of Ramos as an expert in "code enforcement[,]"[15] Ramos's report is devoid of reference to any code provision—or, for that matter, any other method or standard that he used in reaching his conclusions.[16]

## II.   LAW AND ARGUMENT

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony.  Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).  Rule 702 provides that a witness who is "qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if" (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based upon sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods; and" (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

---

[13] *Id.*
[14] *Id.* at 4.
[15] R. Doc. No. 49.
[16] *See* R. Doc. No. 53-2.

"To qualify as an expert, 'the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)) (internal alterations omitted). "Additionally, Rule 702 states that an expert may be qualified based on 'knowledge, skill, experience, training, or education[.]'" *Id.* at 524; s*ee also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999) (discussing witnesses whose expertise is based purely on experience).

"A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.* (citing *Daubert*, 509 U.S. at 596).

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702[.]" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

4

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique can be or has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *See Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (emphasis omitted) (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the [way] all testimony must be relevant [pursuant to Rule 401], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

> There is no more certain test for determining when experts may be used than the common sense inquiry [of] whether the untrained layman

would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

*Vogler v. Blackmore*, 352 F.3d 150, 155 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702, Advisory Committee Note).  In other words, expert testimony is unnecessary where a jury can "adeptly assess [the] situation using only their common experience and knowledge."  *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

When expert testimony is challenged under Rule 702 and *Daubert*, the burden rests with the party seeking to present the testimony.  *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Atmos argues that *Daubert* and Rule 702 require that Ramos be barred from appearing as an expert witness because "it cannot be determined whether [Ramos] based his opinion on sufficient facts or data [because] . . . . [t]he report does not identify what 'evidence' was available to or used by [Ramos], or what 'evidence' he actually relied upon to form his opinion."[17]  Atmos adds that Ramos's report indicates that he did not review the "specifications that were in place" and, therefore, "would have no basis to for any opinion as to whether any such specifications were sufficient for the job . . . or were not complied with."[18]

Atmos also attacks the reliability of Ramos's opinion, noting that his report does not "cite[] . . . a single generally accepted rule, code or specification employed by the construction industry to support his opinion as to what the proper safety

---

[17] R. Doc. No. 53-1, at 7–8.
[18] *Id.* at 8.

measures are on a construction site."[19]  Atmos highlights Ramos's statements that

"other safety barricades" should be used in conjunction with the "plastic mesh barrier

[that] was used[,]" and that "[c]lean up was inadequate" as examples of conclusions

offered without basis.[20]

### III.   ANALYSIS

### A. Relevancy

As an initial matter, the Court sees little relevant information in Ramos's

report that would "assist the trier of fact [in] understand[ing] or determin[ing] a fact

in issue[.]"  *See Bocanegra*, 320 F.3d at 584.  For example, Ramos notes that "[t]he

excavated areas were left open for an extended amount of time" and opines that "it is

better to close an excavated area as soon as possible to minimize the exposure of

danger to the public."[21]  The average juror is capable of grasping that it is safer to

close holes in the ground than to not close them; the Court is not convinced that

Ramos's testimony on the point will assist the jury.

Similarly, Ramos notes that "[c]lean up was inadequate" and opines that "the

entity responsible for [the] work" should have done the cleaning.[22]  He explains—

presumably based on his experience, though he does not say—that "unless someone

is there to enforce [clean-up], it does not happen."[23]  He adds that "[o]bviously the

responsible entity did not provide any type of supervision [or] . . . . the responsible

---

[19] *Id.*
[20] *Id.*
[21] R. Doc. No. 53-2, at 2.
[22] *Id.* at 3.
[23] *Id.*

Supervisor failed to perform their duties."[24]   This is clear, according to Ramos, because "[t]he exposed areas . . . should have been maintained in a [safe] manner[,]" and "[i]t is obvious that this did not happen."[25]  The Court understands Ramos to be concluding that the defendant's clean-up efforts were inadequate to keep the site safe based on the fact that the site was unsafe.  As sound a conclusion as this may be, it is one based in common sense.  Ramos's expert testimony on that point, therefore, is unnecessary.

Ramos also opines that "the work being performed . . . was subcontracted."[26] The Court does not find that Ramos's expert testimony on that point would assist the jury.  Both Henderson and Atmos have alleged that Miller Pipeline, LLC, performed the work in question pursuant to a contract with Atmos—indeed, this fact was the basis of Atmos's third-party complaint[27] and for Henderson's motion[28] to amend his complaint.  Assuming Ramos could and would offer an opinion that Atmos contracted the work based in some sort of expert knowledge,[29] the Court does not see how it would be helpful to the trier of fact.

*B. Reliability*

---

[24] *Id.*

[25] *Id.*

[26] *Id.* at 2.

[27] R. Doc. No. 23.

[28] R. Doc. No. 56-3.

[29] Even if the question was relevant and at issue, Ramos's report is woefully inadequate on this point.  It simply states that the fact the work was subcontracted is "apparent" without any further explanation.  R. Doc. No. 53-2, at 2.

Ramos's opinions as to the sufficiency of the barriers and whether Henderson would have slipped under different circumstances, if based in expert knowledge, would certainly be helpful to the trier of fact. However, as Atmos points out, Ramos's report is bereft of *any* description of the factual basis for his conclusions or the methodology used to reach them.

On the first point, Ramos states that the "[b]arricades were inadequate. It appears that a plastic mesh barrier was used. This should be used in conjunction with other safety barricades. Also an adequate amount of this combination should be applied so that all affected area and the areas that contain excavated material[] are within the barricaded areas."[30] He concludes that "[t]his obviously did not happen since there was excavated material outside of the barricaded areas."[31] Ramos does not explain how he knows that only plastic barriers were used. He does not explain how he knows that other safety barricades were not used. He does not explain whether the use of other barriers is an industry standard, a code requirement, a specification of typical contracts, or a best practice that he has developed or observed during his decades in the industry. In short, Ramos's submission offers the Court nothing with which it can evaluate the reliability of his testimony under *Daubert*; the Court cannot conclude that any of the elements of the inquiry set forth in Rule 702 are satisfied. Fed. R. Evid. 702; *see Daubert*, 509 U.S. at 588.

---

[30] R. Doc. No. 53-2, at 2.

[31] *Id.* at 2–3. The Court notes that this last conclusion, like those discussed *supra*, appears to be based on common sense and logic, not expert knowledge.

Ramos's conclusion that Henderson would not have been injured if the site were adequately maintained is similarly unsupported.  Ramos does not describe his underlying knowledge, if any, of the accident and he does not explain how he reached his opinion.

When expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony.  *Moore*, 151 F.3d at 276.  Ramos's report does not provide any evidence of its sufficiency, and Henderson declined to offer any opposition to Atmos's motion.  No portion of the opinion described in Ramos's report is acceptable under *Daubert* and Rule 702.  Consequently, the Court must conclude that Ramos cannot testify as an expert at trial.

## IV.

The expert opinion described in Ramos's report is inadmissible at trial, which is less than three months away.  Accordingly,

**IT IS ORDERED** that the motion is **GRANTED WITHOUT OPPOSITION**. Henderson may not offer Ramos as an expert at trial.

New Orleans, Louisiana, October 20, 2020.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE