# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **STEVEN EUGENE HENDERSON** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 2:19-cv-13072-LMA-DMD** |
| **ATMOS ENERGY, ET AL** | * | **SECTION "I"** |
| * * * * * * * * * * * * * * * * * * * * * * * * * | * | **JURY TRIAL REQUESTED** |

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.)    STATEMENT OF FACTS:**

Plaintiff filed suit on October 21, 2018 alleging negligence on behalf of Atmos Energy Corporation for failure to maintain their construction site. Plaintiff was exiting his parked car in Westwego, Louisiana at Avenue A where Atmos Energy Corporation and Miller Pipeline, LLC were engaged in construction work for some time prior. As a result of the construction work, excavated materials were left in front of and near the home of Plaintiff. After exiting his vehicle, Plaintiff slipped and fell on the mud that was left outside. The netting over the piles failed to contain the mud which caused him to slip, fall, and sustain his injuries.

**II.)    ATMOS ENERGY CORPORATION'S EMPLOYMENT CONTRACT CREATES AN EMPLOYEE/EMPLOYER RELATIONSHIP CREATING A GENUINE ISSUES OF MATERIAL FACT.**

This section addresses the arguments made by opposing counsel that 1.) Atmos is not vicariously liable for any alleged torts of its independent contractor, Miller Pipeline, LLC and 2.) that Atmos did not control or supervise the Avenue A work site such that any direct negligence exists (operational control argument). Both of the arguments presuppose that there is no genuine

2

issue of material fact because Atmos Energy Corporation's boilerplate contract, the MSA, created an Independent Contractor relationship amongst each other. Furthermore, any argument suggesting that the right to clean up or maintain safety is left to a sub-contractor is sufficient to demonstrate the existence of an independent contractor relationship makes a misrepresentation of the law for independent contractors. However, arguments made by opposing counsel are rooted in genuine disputes of material facts and the law is not clear if Atmos Energy Corporation is entitled to judgment. Thus, summary judgment in this case is inappropriate.

In the present case, there exists many genuine issues of material facts. Before Defendant can assert that there exists no genuine issue of material fact for liability, there must be a factual determination as to the relationship between Atmos Energy Corporation, Miller Pipeline, LLC, and Magnolia River. Atmos Energy Corporation presupposes that the language in the contract provides *de facto* proof of an independent contractor relationship between them and Miller Pipeline, LLC. However, the Louisiana substantive law guides this Honorable Court in parsing through the evidence to make a factual determination as to the true nature of the relationship. Per that relationship amongst the contractors, there exists genuine issues of material facts as to the relationship's true nature. To guide the Court and demonstrate there exists a genuine issue of material fact, Louisiana substantive law regarding independent contractors determines whether that relationship exists.

Before setting the standard for creating an independent contractor relationship, the rules on summary judgment will be addressed. "Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted. *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455,

458 (5th Cir.1998). All inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Id.*

The general rules on contracts creating independent contractor relationships provides that a contract using "boilerplate language about control and supervision is insufficient under Louisiana law to establish a relationship as principal and independent contractor." *Hicks v. BP Expl. & Prod., Inc.*, 310 F.Supp.3d 754, 760 (E.D. La.2018). To factually determine whether an independent contractor relationship exists between the parties, the Court looks outside the language contained in the contract and gathers facts from extrinsic evidence to determine the actual relationship between the parties. *Honeycutt v. Deutschmann*, 07-211, p. 5 (La.App. 5 Cir. 1/22/08); 976 So.2d 753, 755, writ not considered, 2008-0406 (La. 4/18/08); 978 So.2d 338. The test employed to determine whether an independent contractor relationship exists between the parties is a five-factor test. Those factors are:

    1.) A contractee-independent contractor relationship presupposes a contract between the parties;

    2.) It likewise presupposes the independent nature of his business, and is not exclusive as to the means whereby it is accomplished;

    3.) It should appear that the contract calls for a specific piecework as a unit to be done according to his own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered;

    4.) It must also appear that a specified price for the overall undertaking is agreed upon;

    5.) that its duration is for a specified time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach

*Amyx v. Henry & Hall*, 227 La. 364, 371–72; 79 So.2d 483, 486 (1955). Most importantly, in applying this test it is **not the supervision and control** which is **actually exercised** which is

significant, the **important question** is whether, from the nature of the relationship, the **right to do so exists**. *Hickman v. S. Pac. Transp. Co.*, 262 La. 102, 117–18; 262 So.2d 385, 391 (1972).

Under these factors, Atmos Energy Corporation is not the principal to Miller Pipeline, LLC, as an Independent Contractor; therefore, their argument regarding operational control fails to apply to the current facts of the case. Therefore, Atmos Energy Corporation fails to show the summary judgment standard because there exists genuine issues of material fact as to the contractual relationship and the law cited does not entitle them to judgment.

**1.) The language in the contract is boiler plate and cannot, alone, establish an independent contract relationship.**

Here, Atmos Energy Corporation is undoubtedly the employer of Miller Pipeline, LLC. First, the language of the contract is insufficient to establish an independent contractor relationship. The language is boilerplate, at best. In comparing the language of both contracts, the language is apparently boiler plate because the language used is recycled, copied, and pasted identical to both contracts. Furthermore, the contract omits the names of the company, Atmos Energy Corporation, and contractor, Miller Pipeline, LLC (or Magnolia River) and opts for the definitive boiler plate language of "CONTRACTOR" and "COMPANY." *Exhibit A-3* at 24 and *Exhibit A-1* at 25. This method is used for convenience and efficiency. Thus, it is indisputable that this is boiler plate language and does not establish an independent contractor relationship on its own. To avoid being boilerplate, there would need to be specifics about the actual work to be done for the independent contractor. However, in both agreements, additional boilerplate language is used to assert that "CONTRACTOR will provide and furnish all material, labor, services, supervision, tools, apparatus, conveyances, equipment, and incidental expenses required to complete the Work, except for those specifically mentioned in this agreement to be provided by COMPANY." *Exhibit*

*A-1* at 25. This language uses every synonym and phrase in one document and in one sentence. That is plainly boiler plate language. If this were not boilerplate and instead a well targeted document specific to each employee, then the language would actually include what is it that needs to be done specifically for each employee. Without such specificity, there exists no contractual relationship for an independent contractor.

### 2.) Under the *Amxy* factors, Atmos Energy Corporation has failed to establish their contractual relationship is that of an Independent Contractor.

Per *Amxy*, Atmos Energy Corporation has established there is a valid contract between the parties. The use of the boiler-plate language is insufficient to definitively prove that an Independent Contractor relationship between the two. Nonetheless, the contract is valid. Upon application of the remaining factors, Atmos Energy Corporation retained the right to exert significant control over Miller Pipeline, LLC per the scope of work assignment; Atmos dictated the means of accomplishing the work, and Atmos Energy Corporation was free to terminate the contract at will. Thus, the application of the facts to the factors presented raises a genuine issue of material fact as to the nature of the contractual relationship between Atmos Energy Corporation and their sub-contractors. These contested facts depicts a genuine issue of material fact making summary judgment inappropriate.

### a.) There is a contract amongst the parties. However, Atmos has the <u>right</u> to exert significant control over its employee, controls the means and methods for accomplishing the assignment, and is subject to termination at the will of Atmos Energy Corporation.

The exhibits attached opposing counsel's motion undoubtedly show that with each entity, Atmos Energy Corporation has a valid contract amongst each other. However, the relationship

among them is that of an employee and employer. The contract in Exhibit A-1 is full of boilerplate language and lacks any substance as to the right of supervision and control and as to the means and methods of accomplishing the task. The "Task Request" provides the substance of the means and methods for accomplishing the job at Avenue A in Westwego. The pertinent inquiry is whether the right to supervise and control exists, and the bulk of the "Task Request" demonstrates that Atmos did not leave Miller Pipeline, LLC to accomplish the work under their own direction. Atmos Energy Corporation's right to control and supervise was ever present, making Atmos Energy Corporation an employer to Miller Pipeline, LLC.

The Task Request details meticulously how the entire job assigned to Miller Pipeline, LLC should be accomplished with over fifty individual mandates from Atmos to Miller Pipeline. Moreover, Miller Pipeline is required to sign each page and date acknowledging their submission to the terms provided by Atmos. *Exhibit A-2*. From the outset, the long list of requirements indisputably places Atmos in a position of supervision and control over all of the work done by Miller Pipeline. Otherwise, if Miller was left to their own control, a meticulously crafted list would not need to be provided.

Atmos Energy Corporation's "Task Request" details specifically that they retain exclusively the right to supervise and control Miller Pipeline, LLC, who acquiesced to the agreement. While Scott Serou, defendant's corporate representative, testimony relates to the case, his testimony regarding the actual exercise of control over the construction site does not favor a finding that the relationship is that of an independent contractor. In Atmos' own document, Atmos provides that "COMPANY [Atmos Energy Corporation] reserves the right to inspect ongoing and completed work." *Exhibit A-2* at 3, Section D, 6. This directly implicates Atmos Energy Corporation as an employer because it had reserved the right to limitlessly control and supervise

7

all of the work done by Miller Pipeline, LLC. Atmos' role as employer is made clearer by the fact that the "Task Request" emboldens it's right of control and supervision. The pertinent provision states that "Amos has the right to have **any welder or crew** we deem not competent to perform work on our system to be removed from the project." *Exhibit A-2* at 3, Section D, 12. Thus, Atmos asserts that it had the right to control and supervise the competency of all workers on site and admits to the construction site at Avenue A being their own because the site is "our [Atmos Energy Corporation's] system." When both Section D, 6 and D, 12 are read in connection with each other, it becomes apparent that the construction site belongs to Atmos and each person there is subject to Atmos' control and supervision. At Avenue A, Atmos is positioning itself as an employer of all persons at the site for Miller Pipeline, LLC. Even more so, Atmos Energy Corporation has the right to supervise and control the outcome of any dispute that any person employed by Miller Pipeline, LLC may have. *Exhibit A-2* at 3, Section D, 11. Thus, the true nature of the relationship is that Atmos is limitless in their right to control and supervise the work of Miller Pipeline, LLC; therefore, Miller is an employee of Atmos Energy Corporation.

In reference to the previously stated *Amyx* factors, 1.) Atmos Energy Corporation's extraordinary amount of control prohibits Miller Pipeline, LLC from doing Miller's work in an independent nature, 2.) Atmos imposes exclusive means for accomplishing the work assigned, 3.) Atmos imposes significant control over the methods, and 4.) Atmos' contract does not provide for a specific price and allows Atmos to terminate the contract at will. Miller cannot independently accomplish the work assigned. Rather, if Miller wants to conduct work in a manner divergent from Atmos' prescribed rules, a "change order" must be provided and approved by Atmos. See *Exhibit A-2* at 4, Section D, 17. The means of accomplishing all the tasks in the "Task Request" are listed by Atmos Energy Corporation and prevents Miller Pipeline from engaging in any of Miller's own

exclusive means for accomplishing any assigned work. In both the general work to be accomplished and specific piece tasks done, Atmos Energy Corporation controls and supervises the means and methods for accomplishing the work. Atmos explicitly provides that it controls every aspect of the work assigned to Miller Pipeline, LLC by stating, "[Miller Pipeline, LLC] perform all work in accordance with the Atmos Energy Construction & Procedures Manual, Atmos Energy Operations & Maintenance Manual and any other applicable notices, updates or postings to the CONTRACTOR available through ISNetworld Communication Manager/Atmos Energy Corporation Bulletin Board." *Exhibit A-2* at 1, Section C, 4. Each tool and manual that Miller is to derive methods and means from comes directly with Atmos' name attached to it. Miller is required to do the work as outfitted in all of Atmos' manuals which ultimately governs the methods and means for accomplishing the work at Avenue A. Another example to illustrate the control exerted by Atmos over Miller for specific tasks provides that, "all cuts made on existing pipeline facilities are to be made by 'cold cut' method not 'torch cut.'" *Exhibit A-2* at 3, Section D, 10. This is a means for accomplishing the work and if Miller believed that the "torch cut" method was the best means, a "change order" would be necessary to implement those new means. Thus, the exclusive means provided in the "Task Request" demonstrates that Miller Pipeline, LLC cannot be an independent contractor, and Atmos' imposes, controls, and supervises Miller's methods which makes Miller an employee of Atmos.

Turning to the last factor *Amyx* factor, Atmos' agreement provides both no specific price and allows for Atmos to terminate the employment contract at will without any liability for breach. Atmos' employment contract provides for weekly invoices, no specific price and is subject to termination at will without a corresponding liability for breach. The provisions on termination provide that "COMPANY [Atmos Energy Corporation], may terminate this agreement, in whole

9

or in party, at any time, at its sole discretion, by providing written notice of termination to CONTRACTOR [Miller Pipeline, LLC]." *Exhibit A-1* at 28. Nothing in the contract mentions liability for breaching the agreement. In fact, the only mention of liability is that if "the agreement or work is terminated COMPANY'S [Atmos Energy Corporation] only liability will be to pay CONTRACTOR [Miller Pipeline, LLC] the unpaid balance due CONTRACTOR for work actually performed." *Exhibit A-1* at 29. The following provision mentions termination for the event of default but makes no mention of holding the contractor liable for the breach of the agreement. The provision only provides that Atmos' Contract Coordinator will determine the unpaid balance in relation to the expenses remaining. With only mentions of hourly rates, the ability to terminate at will and no liability for breach of contract, the last factor undoubtedly demonstrates that this agreement is an employee-employer relationship.

In rebuttal to opposing counsel's arguments that Miller was responsible for safety, control, and compliance with all laws, that argument fails to establish an independent contractor relationship. *See MSJ* at 5. Again, the pertinent inquiry is **not** on who has what tasks but rather on the right to control and supervise the work being performed. *Hickman v. S. Pac. Transp. Co.*, 262 La. 102, 117–18; 262 So.2d 385, 391 (1972). Atmos Energy Corporation can delegate work to other contractors, but that in and of itself does not create an independent contractor relationship. By retaining the right to control and supervise, Atmos position itself as an employer. Actual control exercised is not required to establish an employee-employer relationship Atmos Energy because the contract governs the status of the relationship. As shown, Atmos Energy Corporation retained the right to supervise, control, and inspect resulting in an employee-employer relationship.

Thus, there either exists a genuine issue of material fact warranting trial, or Atmos Energy Corporation is undoubtedly shown by the framework above to be the employer of Miller Pipeline,

LLC. Overwhelmingly, the contract and "Task Request" provides Atmos the right to control and supervise Miller Pipeline, LLC. With such power and rights vested in Atmos to supervise and control, it is undoubtedly shown that Miller Pipeline, LLC is an employee of Atmos Energy Corporation. Atmos' representations and contracts fail to establish an independent contractor relationship among the parties. Instead, Atmos Energy Corporation is the employer to Miller Pipeline, LLC.

### 3.) Defendant's corporate representative, Scott Serou's, testimony misrepresents the actual control, rather than the right to control, exerted by Atmos Energy Corporation over Miller Pipeline, LLC.

Alternatively, and in contradiction to the testimony of Scott Serou, the right to supervise and control is actually exercised by Atmos Energy Corporation, and Atmos Energy Corporation imposes its own methods and means in direct contradiction to the standard for an independent contractor.

As in previous cases applying Louisiana law for independent contractors, discovery revealed a genuine issue of material fact as to whether there was an independent contractor or employee/employer relationship. Furthermore, the case provides that a principal exerting control over the means of accomplishing work assigned likely creates an employee/employer relationship by 1.) having the principal assign specific tasks, 2.) controlling the hours of work, and 3.) having to gain approval for additional work. *Honeycutt v. Deutschmann,* 07-211, p. 6 (La.App. 5 Cir. 1/22/08); 976 So.2d 753, 756, writ not considered, 2008-0406 (La. 4/18/08); 978 So.2d 338.

Here, Atmos Energy Corporation positioned itself as an employer of Miller Pipeline, LLC. These instances create an employee-employer relationship because control is actually imposed on Miller Pipeline, LLC. The "Task Request" provides that the hours of work are controlled and approval for additional work is required. First, Atmos sets its rates for the first fifty hours and "any

work done without the Project Manager's approval will be considered non-compensable." *Exhibit A-2* at 4, Section D, 17; *See Exhibit A-1* at 43. Atmos has a cap on the total number of hours to be worked because an employee won't work more than fifty hours if they are not going to be paid for it. Thus, the requirement of having extra hours be pre-approved to be compensable absolutely sets a cap at fifty hours per week. Furthermore, all work that is accomplished is controlled and reviewed by Atmos because Miller is required to "invoice on a weekly basis on project." *Exhibit A-2* at 3, Section C, 30. The agreement was signed and executed on August 10, 2018, and Mr. Henderson sustained his injuries on October 21, 2018 at Atmos' construction site. The excavated material being placed near Henderson's home by Atmos and Miller clearly demonstrates that work was being performed, and Miller Pipeline had to invoice for the work for the multiple weeks prior to the accident. Thus, by submitting the invoices weekly, Atmos engaged in actual control over Miller Pipeline's work.

**III.) CONSTRUCTIVE NOTICE DOES NOT APPLY TO THE CURRENT FACTS BECAUSE MR. HENDERSON SUSTAINED HIS INJURIES AT A CONSTRUCTION SITE, NOT A COMMERCIAL OR MERCHANT ESTABLISHMENT.**

This section addresses the last argument advanced by Atmos Energy Corporation. The argument provides that, "Atmos had no actual or constructive notice of the alleged incident." *MSJ* at 9. The citation provided is *Burns v. Sedgwick Claims Mgmt. Servs., Inc.,* 165 So. 3d 147, 153 (La. App. 5 Cir. 2014). However, the case cited applies to Merchant Liability. Mr. Henderson sustained his injuries at Atmos Energy Corporation's construction site, not a merchant or commercial premise. Thus, the law cited is inapplicable to the facts and shows Atmos Energy Corporation is not entitled to judgment as a matter of law under their own misuse of the law.

If Defendant succeeds in being an independent contractor, then there are two exceptions to liability for a principal to an independent contractor: 1.) ultrahazardous activity and 2.) liability is

imposed upon a principal for the negligent acts of an independent contractor when the principal reserves the right to supervise or control the work. *Davis v. State Farm Ins. Co.*, 558 So.2d 636, 639 (La. Ct. App.1990) citing *Hawkins v. Evans Cooperage Co., Inc.,* 766 F.2d 904 (5th Cir.1985).

Here, Atmos' allegations that Miller is an independent contractor is easily refuted. The standard for imposing liability is easily met because it is undoubtedly shown that Atmos Energy Corporation has reserved the entirety of the right and relinquished none of the right to supervise and control the work done by Miller Pipeline, LLC. In Atmos' "Task Request," Atmos provides that "COMPANY [Atmos Energy Corporation] reserves the right to inspect ongoing and completed work." *Exhibit A-2* at 3, Section D, 6. This directly implicates Atmos Energy Corporation as an employer because they have reserved the right to limitlessly control and supervise all of the work done by Miller Pipeline, LLC. The "Task Request" emboldens their right of control and supervision. The pertinent provision in the "Task Request" states that "Atmos has the right to have any welder or crew we deem not competent to perform work on our system to be removed from the project." *Exhibit A-2* at 3, Section D, 12. Both of these provisions and the burdensome list imposed on Miller Pipeline, LLC demonstrates that Atmos Energy Corporation has reserved the right, exclusively, to supervise and control the site at Avenue A where both Atmos Energy Corporation and Miller Pipeline, LLC were present. Thus, if Atmos Energy Corporation is engaged in a relationship as the principal to an independent contractor, then Atmos' reservation of rights to control and supervise makes it liable as principal.

**IV.) CONCLUSION**

As presented, summary judgment is inappropriate. Plaintiff has clearly demonstrated that Atmos Energy Corporation has failed to create an Independent Contractor relationship with any of its subcontractors. Atmos Energy Corporation retained the right, exclusively, to supervise and

control all of the work done at Avenue A. At the least, these facts presented in the "Task Request" and MSA raise genuine issues of material facts that should be dealt with at trial. Further, even if Atmos Energy Corporation is a principal to an independent contractor, then their exclusive and unlimited right to control and supervise the work of Miller Pipeline, LLC makes them liable for negligent maintaining the construction site. This summary judgment motion should be denied for existing genuine issues of material fact that will ultimately determine which theories of liability are viable and which are not.

Respectfully Submitted,

*/s/Connie Trieu*
CONNIE TRIEU (30312)
TRIEU LAW, LLC
1800 Carol Sue Avenue, Suite 7
Gretna, LA 70056
Telephone: (504) 301-4525
Facsimile: (504) 301-4683
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on the 10th day of November 2020, a copy of the above and foregoing was filed electronically with with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/Connie Trieu*
CONNIE TRIEU (30312)
